UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Deborah Drda Evans,          )     Civil Action No.: 4:13-cv-00987-RBH

            )

        Plaintiff,        )

            )

v.                 )     **ORDER**

            )

Quintiles Transnational Corp.,    )

            )

        Defendant.     )

_____)

This matter is before the Court on Plaintiff's motion *in limine* for negative inferences from missing evidence [ECF #117], Defendant's motion *in limine* concerning damages [ECF #118], and Defendant's omnibus motion *in limine* [ECF #119]. For the reasons set forth more fully below, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's motion *in limine* for negative inferences from missing evidence [ECF #117]; **GRANTS IN PART and DENIES IN PART**, Defendant's motion *in limine* concerning damages [ECF #118]; and **GRANTS IN PART and DENIES IN PART**, Defendant's omnibus motion *in limine* [ECF #119].

## Background

This wrongful termination action was initially filed by Plaintiff, Deborah Drda Evans, in state court and was subsequently removed to this Court by Quintiles Transnational Corp. ("Quintiles") on April 12, 2013. Among other things, Plaintiff alleged that Quintiles' Code of Conduct contained enforceable promises that altered her at-will status and created an employment contract. Plaintiff filed her amended complaint [ECF #16] on August 7, 2013, alleging six causes of action: 1) negligent hiring, retention, and supervision; 2) breach of express employment contract based on a code of conduct; 3) breach of contract implied in law; 4) breach of contract implied in

fact; 5) breach of contract accompanied by a fraudulent act; and 6) promissory estoppel. Quintiles moved for summary judgment as to all causes of action.

The Court held a hearing on Quintiles' motion for summary judgment on March 25, 2015, and ruled from the bench ordering that summary judgment was granted as to Plaintiff's causes of action for negligent hiring, retention, and supervision, breach of contract implied in law, breach of contract implied in fact, breach of contract accompanied by a fraudulent act, and promissory estoppel.[1] The Court ruled that summary judgment was granted in part and denied in part as to Plaintiff's cause of action for breach of employment contract based on the Code of Conduct altering the at-will status.

Specifically, because the record evidence established that the decision to terminate Plaintiff was made well before September 19, 2012, the Court granted summary judgment as to Plaintiff's claim that the employment contract was breached when she was terminated allegedly in retaliation for communicating a desire to report her supervisor, Gill, to human resources after an allegedly contentious meeting on September 19, 2012. The Court denied summary judgment, however, as to Plaintiff's claim that the employment contract was breached when she was terminated allegedly in retaliation for raising a good faith concern about the way travel-related rebates/commissions were handled and that her concerns were allegedly never investigated.

With respect to the sole remaining claim for breach of contract based on the Code of Conduct, Plaintiff claims that her at-will status was altered by two provisions or promises in the Code of Conduct - the alleged promise not to retaliate against employee's who raise good faith concerns and the alleged promise to investigate those good faith concerns. The Court held that after

---

[1] The Court also denied Quintiles' motion in limine without prejudice with leave to refile.

2

reviewing the statements in the Code of Conduct, along with the disclaimer, the Court could not say beyond any doubt that an enforceable promise either did or did not exist.  Consequently, the Court concluded it was proper to submit the issue of whether the Code of Conduct altered Plaintiff's at-will status and created an employment contract to the jury. *See Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2003) (stating "[t]he issue of whether an employee handbook constitutes a contract should be submitted to the jury when the issue of the contract's existence is questioned and the evidence is either conflicting or is capable of more than one inference").

In anticipation of trial, Plaintiff filed a motion *in limine* requesting an order permitting the jury to make negative inferences from alleged missing evidence and allowing counsel to argue and refer to the negative inference in opening, testimony, closing, and jury charges.  Quintiles filed an omnibus motion *in limine* seeking multiple pre-trial rulings on evidence and a motion *in limine* on damages that incorporates a *Daubert* challenge to Plaintiff's damages experts.

## Analysis

### A.     Plaintiff's motion *in limine* - Adverse Inference from Missing Evidence

Plaintiff seeks an order permitting the jury to make negative inferences from missing evidence and allowing counsel to refer to such missing evidence and draw appropriate inferences in opening, testimony, closing, and jury charges.  Plaintiff argues that she is entitled to an adverse inference instruction based on Quintiles' failure to produce 1) Plaintiff's computer file documenting Gill's wrongdoing, and 2) commission-related documents.

Plaintiff was informed of her termination on September 28, 2012, and notified that it would be effective on October 28, 2012.  Plaintiff claims that her company issued laptop computer contained a hidden file that she created documenting Gill's alleged wrongdoing and containing other

3

commission related documents.  Plaintiff claims that during her conversation with Quintiles' human resources representative on September 28, 2012, that she mentioned the existence of "notes" on her computer that she claimed would support her position that she was being retaliated against.  Plaintiff states that she was unable to access her "notes" because her access to the laptop had been cut off. Plaintiff states that after she was notified of her termination, she turned her computer back in.  On November 2, 2012, Plaintiff's counsel sent Quintiles a demand letter alleging retaliatory discharge and indicating damages in excess of one million dollars.  Plaintiff's counsel did not reference a hidden computer file in his letter or request a litigation hold be placed on Plaintiff's company issued laptop.

An affidavit from the Associate Director of Quintiles' legal department, Kim Rose, states that Plaintiff was informed of her termination on September 28, 2012 and placed on 30 days administrative leave, which allowed her to continue to receive employment benefits until October 28, 2012, but relieved her of her job responsibilities.  Rose's affidavit further states that consistent with standard practice, Quintiles terminated Plaintiff's access to the company's computer network upon notification of her termination.  Rose states that when an employee is terminated, they return any company issued laptop computer in the employee's possession and that within 30 days the Outlook file is deleted and the laptop is reimaged for use by a new employee or is retired and recycled if it is past its useful life.

After this lawsuit commenced, on September 27, 2013, Plaintiff served requests for production on Quintiles requesting: 1) a complete copy of Plaintiff's electronic calendar from 2009 through October 28, 2012; 2) a complete copy of Plaintiff's electronic file/folder titled "Hotel" which was allegedly stored on her work computer; 3) all documents referring or relating to,

describing or explaining, the method, procedure, or process by which hotel commissions earned are budgeted and managed by the VP Security of Defendant; and 4) all documents which pertain to how the commissions are used and accounted for by the Defendant.

As the affidavit of Kim Rose indicates, Quintiles states that it did not have possession of any documents responsive to Plaintiff's requests and that no documents relating to the method, procedure, or process by which hotel commissions are earned, budgeted, used, and accounted for ever existed.

Plaintiff argues that if the Court finds a mere failure to produce, without more, that the jury should be allowed to make the following inferences: 1) Quintiles feared producing the computer file and the commission information would have exposed unfavorable facts to the jury; 2) Quintiles feared producing the computer file that would have documented numerous commission-related confrontations between Plaintiff and Gill; 3) Quintiles feared producing the computer file that would have documented the concerns Plaintiff raised to human resources; 4) Quintiles feared producing the computer file that would have documented the motivation for Gill's alleged retaliation; 5) Quintiles feared producing the commission-related documents that would have adversely impacted the finding of whether their commission practices were wrongful; 6) Quintiles feared producing commission-related documents that would have shown that Gill was wrongfully diverting funds and misrepresenting lowest "net" rates to clients; 7) Quintiles feared producing commission-related documents that would have shown that the timing of Plaintiff's confrontations with Gill coincided with her discovery of the alleged commission wrongdoing by Gill, and that Gill's emails and decision to terminate Plaintiff were in retaliation to her raising those concerns; and 8) Quintiles feared producing the computer file and the commission documents that would show

5

they had failed to properly investigate.

A party seeking sanctions based on the spoliation of evidence must establish three elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it. *Thompson v. United States Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D.Md. 2003) (citing *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003))

In *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995), the Fourth Circuit addressed when an adverse inference jury instruction would be warranted for spoliation of evidence. The *Vodusek* Court stated:

> [T]he trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, it is not always necessary.
>
> To draw an adverse inference from the absence, loss or destruction of evidence, it would have to appear that the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence. Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that "the party fears [to produce the evidence]; and this fear is some evidence that the circumstances or document or witness, if brought, would have exposed facts unfavorable to the party."
>
> A party's failure to produce evidence may, of course, be explained satisfactorily. When a proponent cannot produce original evidence of a fact because of loss or destruction of evidence, the court may

permit proof by secondary evidence.  But when a proponent's intentional conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct.  Even if a court determines not to exclude secondary evidence, it may still permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence.  *An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.*

*Vodusek*, 71 F.3d at 156 (emphasis added, internal citations omitted).  Despite Plaintiff's contention that the mere failure to produce is sufficient to permit an adverse inference, if a spoliator's conduct is merely negligent, the adverse inference instruction is not an appropriate sanction. *See Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450-51 (4th Cir. 2004); *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 181 (D. Md. 2008); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 520-22 (D. Md. 2009).

Plaintiff seeks spoliation sanctions for: 1) failure to produce commission related documents allegedly created by Quintiles; and 2) failure to produce and/or the alleged destruction of Plaintiff's hidden computer file that allegedly documented Gill's wrongdoing.

Based on the record before the Court, there is insufficient evidence[2] to conclude that the requested commission related documents allegedly created by Quintiles ever existed, therefore, the Court cannot find that Quintiles' failure to produce the requested commission related documents

---

[2]        Regarding the request for Quintiles generated documents concerning hotel commissions, the only evidence is Kim Rose's affidavit, which states that there are none.  Plaintiff has offered no evidence to the contrary.  These alleged documents are different from the "hotel" file which Plaintiff attests she created.

warrants spoliation sanctions or an instruction permitting an adverse inference to be drawn from Quintiles' failure to produce them. Plaintiff offers no evidence that the requested commission related documents ever existed. Plaintiff cannot establish that any Quintiles generated commission related documents were willfully lost or destroyed by Quintiles. Therefore, it would not be appropriate to allow the jury to draw an adverse inference from the alleged loss or destruction of the requested alleged Quintiles generated commission related documents.

With regard to the "hidden" computer file, assuming the file did in fact exist as Plaintiff claims, the duty to preserve Plaintiff's company issued laptop and its contents could have arguably attached as early as Plaintiff's conversations with human resources representative Jennifer Smith on or around September 28, 2012, or possibly as late as the receipt of Plaintiff's counsel's November 2, 2012 letter. "The duty to preserve material evidence arises not only during litigation but also extends to *that period before the litigation when a party reasonably should know* that the evidence may be relevant to anticipated litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (emphasis added). As Rose stated in her affidavit, when an employee is terminated, the employee returns any company issued laptop computer in the employee's possession and within 30 days the Outlook file is deleted and the laptop is reimaged for use by a new employee or is retired and recycled if it is past its useful life. However, "[o]nce a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a 'litigation' hold to ensure the preservation of relevant documents." *Goodman*, 632 F. Supp. 2d at 511 (citing *Thompson v. United States Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D.Md. 2003)).

The issues of whether the alleged computer file ever existed and, if it did, whether and when

Quintiles should have reasonably known that the evidence may be relevant to the anticipated

litigation, and whether Quintiles willfully lost or destroyed the computer file rests on credibility

determinations that this Court is not in a position make at this stage.  Because of the disputed facts

at issue, the Court is inclined to provide the jury with appropriate guidelines and instructions so that

they, after hearing all of the evidence, can resolve any credibility questions and make a

determination, first, as to whether the alleged computer file even existed on Plaintiff's computer,

whether and when Quintiles should have reasonably known that the evidence may be relevant to

anticipated litigations, and, if so, whether Quintiles willfully lost or destroyed the file.  The parties

are invited to submit proposed jury instructions setting forth the applicable law.  Accordingly,

Plaintiff's motion *in limine* for negative inferences from missing evidence is **GRANTED in part**

**and DENIED in part** as to the alleged missing computer file to the extent the Court will allow

Plaintiff to introduce evidence of the alleged missing computer file and its alleged loss or

destruction.  The Court will submit the spoliation issue of the alleged missing computer file to the

jury.  As to the requested Quintiles generated commission documents that were not produced,

Plaintiff's motion *in limine* for negative inferences is **DENIED.**

**B.**    **Quintiles' motion *in limine* concerning damages**

Quintiles moves to exclude certain portions of Plaintiff's damages evidence including

testimony from Plaintiff's experts, Dr. Wood (economist) and Dr. Vander Kolk (vocational expert).

Specifically, Quintiles argues: 1) Damages Motion *in limine* #1 -  Plaintiff's speculative testimony

regarding how long she believes she would have worked for Quintiles absent her termination,

whether she would have been promoted, and what her salary would have been if that promotion had

occurred should be excluded; 2) Damages Motion *in limine* #2 - Plaintiff's experts' testimony

should be excluded to the extent they adopt and rely on Plaintiff's speculative testimony regarding the length of her employment, salary, and any promotions; Dr. Vander Kolk is not qualified to give an opinion on the quality of someone's job search; Dr. Vander Kolk should not be permitted to testify about the length of time Plaintiff will remain unemployed; Dr. Vander Kolk's opinion regarding comparable employment is unreliable; Dr. Wood's opinions, to the extent they rely on Dr. Vander Kolk's opinions, should be excluded; 3) Damages Motion *in limine* #3 - Plaintiff should not be permitted to testify regarding her emotional distress; 4) Damages Motion *in limine* #4 - Plaintiff should be prohibited from making any argument or request for punitive damages; and 5) Damages Motion *in limine* #5 - Plaintiff should be prohibited from introducing any evidence of any damages other than non-speculative compensatory damages based solely on lost wages.

In her response to Quintiles' motion, Plaintiff indicates that she is not pursuing punitive damages or damages for emotional distress. Quintiles' damages motion *in limine* ## 3 and 4 is **GRANTED** as to punitive damages and damages concerning alleged emotional distress.

Concerning Quintile's damages motion *in limine* #1 regarding Plaintiff's testimony as to how long she would have worked for Quintiles if not terminated, any promotions, or salary, Quintiles' arguments go to the weight of the testimony rather than admissibility. The cases relied on by Quintiles are Title VII cases involving awards of front-pay, which is an equitable determination by the judge. In each of the cases, the awards of front-pay were challenged as unduly speculative. The jury, as fact-finder in this case, will determine future lost wages[3] and be instructed that the

---

[3]        Whether future damages are reasonably certain to occur is the standard of proof for future damages. *Pearson v. Bridge*, 544 S.E.2d 617, 619 (S.C. 2001). The standard of admissibility for evidence of future damages is "any evidence which tends to establish the nature, character, and extent of injuries which are the natural and proximate consequences of the defendant's acts . . . if otherwise competent." *Pearson*, 544 S.E.2d at 620 (citing *Martin v. Mobley*, 169 S.E.2d 278, 281-82 (S.C. 1969).

amount of damages cannot be left to conjecture, guesswork, or speculation and that while proof of amount of loss with absolute or mathematical certainty is not required, damages must be proved with a reasonable degree of certainty.  Quintiles is free to cross examine Plaintiff on the issue of damages and question the basis for her belief that she would have continued to work for Quintiles until retirement age and would have received a promotion and salary increase.  Moreover, Quintiles could certainly call its own witnesses to challenge Plaintiff's assertion that she would have continued to work at Quintiles until retirement age and would have received promotions and salary increases.  It is the province of the jury to determine the amount of damages based on all of the evidence following appropriate instructions from the Court.  Quintiles' damages motion *in limine* #1 is **DENIED**.

With respect to Quintiles' damages motion *in limine* #2 regarding the admissibility of testimony from Plaintiff's experts, Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As the United States Supreme Court has explained, evidence is admissible under Rule 702 if "it rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993).  Because "expert witnesses have the potential to be both powerful and quite

11

misleading," courts must "ensure that any and all [expert] testimony ... is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999); *Daubert*, 509 U.S. at 588, 595). "Rule 702 grants the district judge the discretionary authority ... to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999).

In *Daubert*, the Supreme Court identified five nondispositive factors for evaluating the reliability of proposed expert testimony: (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *See United States v. Crisp*, 324 F.3d 261, 265–66 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593–94). The *Daubert* test is flexible, however; "[r]ather than providing a definitive or exhaustive list, *Daubert* merely illustrates the types of factors that will bear on the inquiry." *Id*. at 266. As the Court of Appeals for the Fourth Circuit has noted: "In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.1999).

After reviewing Quintiles' motion *in limine*, memorandum in support, and attachments, along with Plaintiff's response and attachments, the Court finds Plaintiff's experts' opinions to be both sufficiently relevant and reliable, and therefore admissible, and that *Daubert* and Rule 702 are

satisfied.  Any assumptions made by the experts and the basis of their opinions can be thoroughly

addressed by cross-examination.[4]  Vander Kolk's opinion regarding how long Plaintiff would have

remained employed at Quintiles had she not been terminated is relevant and reliable in that it is

based on Plaintiff's stated intention, Vander Kolk's 40 years experience in the vocational field, his

professional training, Plaintiff's generally good performance ratings, her good health, and the

general tendency of people in their 50's and 60's to stay with their employer.  Vander Kolk's opinion

as to whether Plaintiff made a diligent job search is relevant and  reliable in that it is based on

Vander Kolk's 40 years of experience in the vocational field, Plaintiff's records regarding her job

search, his own research and investigation into job openings potentially available to the Plaintiff,

and professional guidelines for determining whether a person has or is making a diligent effort to

find a job.  Vander Kolk's opinion regarding the expected length of Plaintiff's unemployment or

expected length of time it would take to find employment comparable to her position at Quintiles is

relevant and reliable in that it is based on Vander Kolk's education, 40 years experience in assisting

people with the job placement process, the relatively low number of positions (not openings) that

exist for the occupation of Travel Coordinator, Plaintiff's age, and the nature or condition of the

economy.  Vander Kolk's opinion regarding the type of employment Plaintiff may be able to obtain

is relevant and reliable in that it is based on his 40 years experience in the vocational field as well as

Bureau of Labor Statistics and the Occupational Outlook Handbook.  Finally, Vander Kolk's

opinion regarding Plaintiff's expected salary at attainable employment is relevant and reliable in that

it is based on Vander Kolk's 40 years experience, research, and professional literature.  Dr. Wood's

---

[4]        Federal Rule of Evidence 703 provides the bases of an expert's opinion testimony and includes
facts or data reasonably relied on by experts in the field.

opinions, which are based in part on Vander Kolk's opinions, are likewise relevant and reliable.

Quintiles does not challenge the qualifications of either expert or their education, experience, or credentials. Quintiles' arguments go to the weight and credibility of the proffered expert opinions, not their admissibility. Plaintiff's expert witnesses can be thoroughly cross-examined by Quintiles as to each of Quintiles' concerns regarding any information relied on or assumptions made by the experts. The Court is satisfied that Plaintiff's experts' proposed testimony meets the requirements of *Daubert* and Rule 702. Quintiles' damages motion *in limine* #2 is **DENIED**.

Quintiles' damages motion *in limine* #5 appears to be nothing more than a vague restatement of its previous arguments and is **DENIED**.

### C.    Quintiles' omnibus motion *in limine*

Quintiles filed an omnibus motion *in limine* requesting evidentiary rulings on 27 separate issues. The Court will address each one as follows:

### 1.    Evidence concerning the *Kester v. CP&L* matter

Quintiles moves to exclude evidence of proceedings before the Nuclear Regulatory Commission ("NRC") related to a complaint filed against CP&L, Gill's prior employer, by former CP&L employee Richard Kester in 1999. Kester claimed that CP&L terminated his employment in retaliation for his complaints to NRC investigators that Gill had attempted to "blackmail" him to assume responsibility for alleged security violations at a nuclear facility. Quintiles also moves to exclude evidence of other NRC investigations involving disgruntled CP&L employees who lodged complaints against CP&L.

The NRC matters are too remote in time and not relevant to this case for breach of an employment contract based on the Quintiles Code of Conduct. The evidence is therefore excluded under Rule 401 and 402 of the Federal Rules of Evidence.[5] Further, to the extent the evidence could be relevant, it is excluded under Rule 403 of the Federal Rules of Evidence.[6] Quintiles' motion *in limine* to exclude evidence of the *Kester v. CP&L* and other NRC matters is **GRANTED**.

**2.    Use of the term "kickbacks"**

Quintiles moves to bar Plaintiff, her counsel, or any witness from referring to hotel commissions and rebates as "kickbacks." Quintiles argues that use of the term "kickbacks" in the context of this case is highly prejudicial and implies illegality. The Court agrees. Use of the term "kickbacks" is unnecessarily inflammatory and excluded under Rule 403 of the Federal Rules of Evidence. Quintiles' motion *in limine* regarding the use of the term "kickbacks" is **GRANTED**.

**3.    Evidence concerning September 19, 2012**

Quintiles moves to exclude evidence concerning the September 19, 2012 meeting, Plaintiff's and other witnesses' perception of that meeting, Plaintiff's subsequent communications with Keeler, Barakat, Reeve, and any other witnesses about that meeting, Plaintiff's mistaken belief that Gill

---

[5]    Federal Rule of Evidence 401 provides that "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.
       Federal Rule of Evidence 402 provides "[r]elevant evidence is admissible unless any of the following provides otherwise:
       • the United States Constitution;
       • a federal statute;
       • these rules; or
       • other rules prescribed by the Supreme Court.
Irrelevant evidence is not admissible." Fed. R. Evid. 402.

[6]    Federal Rule of Evidence 403 provides "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

retaliated against her because he allegedly learned about her plan to report him following the meeting, and any other evidence related to Plaintiff's September 19, 2012-based retaliation claim.

Quintiles' motion *in limine* to exclude evidence relating to the September 19, 2012 meeting is **DENIED**.  The evidence is relevant to Plaintiff's claims and is relevant to demonstrate the working relationship between Plaintiff and Gill and, as Plaintiff argues, relevant to show that Gill was operating in an alleged retaliatory manner.  If requested by Quintiles, the Court will instruct the jury that the decision to terminate Plaintiff was made before the September 19, 2012 meeting.

**4.     Evidence concerning post-termination reports and investigations**

Quintiles moves to exclude evidence concerning reports and claims that Plaintiff allegedly made to Quintiles' HR department after she was informed of her termination.  Quintiles argues that the evidence is not relevant to Plaintiff's sole remaining claim and that privilege issues prevent Quintiles from providing any testimony regarding any investigatory efforts.  Plaintiff counters that the evidence is relevant to her claim that Quintiles breached its promise to investigate good faith concerns that she raised during the course of her employment.  Plaintiff also requests a counter motion *in limine* that Quintiles be barred from discussing any investigation it claims to have done since its own witnesses have admitted that they did no investigation.

The evidence is relevant to Plaintiff's remaining claim for breach of employment contract.  Plaintiff was notified of her termination on September 28, 2012, and informed the termination would be effective October 28, 2012.  Plaintiff's theory in this case is that her at-will status was altered by alleged mandatory promises in the Code of Conduct.  Plaintiff claims that her termination was caused by Quintiles' breach of two promises in the Code of Conduct: 1) promise not to retaliate against employees who raise good faith concerns; and 2) promise to investigate those good faith

16

concerns.  As to the failure to investigate theory, Plaintiff claims that even after she was notified of her termination on September 28, 2012, if Quintiles had performed a proper investigation of the issues she raised, the decision to terminate her would have been reversed before its effective date on October 28, 2012.

Accordingly, the evidence is relevant and Quintiles' motion *in limine* to exclude evidence concerning reports and claims that Plaintiff allegedly made to Quintiles' HR department after she was informed of her termination is **DENIED**.  Plaintiff's counter motion *in limine* seeking to bar Quintiles from discussing any investigation it claims to have done is also **DENIED**.  Quintiles claims that privilege issues prevent it from providing any testimony regarding any investigatory efforts but does not elaborate any further.  To the extent any attorney-client communication privilege issues arise, Quintiles can raise the issue at trial.

### 5.    Evidence of co-worker and third-party opinions about Plaintiff's performance

Quintiles moves to exclude evidence that Plaintiff's co-workers, subordinates, and outside vendors held opinions that Plaintiff was doing a good job.  Quintiles argues the evidence is not relevant, constitutes impermissible expert opinions, and is unduly prejudicial, confusing, and misleading.  However, to the extent the witness has first-hand personal knowledge regarding her duties and responsibilities by working directly with Plaintiff, the proposed evidence is relevant to refute Quintiles and Gill's assertion that Plaintiff was terminated for performance problems and relevant to the issue of whether Plaintiff was retaliated against.  Otherwise, the proposed evidence would not be admissible.  Within these confines, the proposed evidence constitutes permissible lay

17

opinions under Rule 701[7] of the Federal Rules of Evidence and is not subject to exclusion under

Rule 403.  Quintiles' motion *in limine* seeking to bar evidence of co-worker and third-party opinions

about Plaintiff's job performance is **DENIED**.

6.    **Evidence of opinions about Gill and his character**

Quintiles moves to exclude evidence concerning opinions about Gill's character, job

performance, and the manner in which he treated employees other than Plaintiff.  Gill's job

performance is relevant to the retaliation claim only to the extent it relates to Plaintiff's own

performance issues; however, evidence concerning Gill's treatment of others and his demeanor,

character, or personality is not relevant and excluded under Rule 401, 402, and, alternatively, Rules

403 and 404 of the Federal Rules of Evidence.  The Court is not going to allow confusion of the

issues and have the jury decide a popularity contest.  Certainly, evidence regarding the interaction

between Plaintiff and Gill and the demeanor of either during these interactions is relevant.

Quintiles' motion *in limine* to exclude evidence of opinions about Gill and his character is

**GRANTED in part and DENIED in part**.

7.    **Evidence concerning Gill's job performance**

Quintiles also moves to exclude specific documentary evidence concerning Gill's job

performance.  Specifically, Quintiles moves to exclude Gill's personnel file from the time he

worked at CP&L, Gill's performance evaluations at Quintiles from the period of time prior to the

commencement of Plaintiff's employment at Quintiles in 2009, and Gill's performance evaluations

---

[7]    Rule 701 of the Federal Rules of Evidence states: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue: and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

from after the termination of Plaintiff's employment in 2012.  Quintiles does not object to the introduction of Gill's performance reviews for the period of time that Plaintiff was employed at Quintiles - 2009 through 2012.

Gill's personnel file from CP&L, his performance evaluations prior to 2009, and his performance evaluations after 2012 are not relevant to Plaintiff's claims and are excluded under Rule 401, 402, and, alternatively, Rule 403.  Quintiles' motion *in limine* to exclude Gill's personnel file from CP&L, his performance evaluations prior to 2009, and his performance evaluations after 2012 is **GRANTED**.

**8.     Evidence concerning Quintiles' decision to hire Gill**

Quintiles moves to exclude evidence related to Quintiles' decision to hire Gill and the related on-boarding process.  Because the Court granted summary judgment on Plaintiff's negligent hiring claim, evidence related to Gill's hiring at Quintiles is not relevant and excluded under Rule 401, 402, and, alternatively, Rule 403.  Furthermore, introduction of Gill's compensation plan, job application, offer letter, resume, background investigation records, and job interview assessments is likely to mislead or confuse the jury.  Quintiles' motion *in limine* to exclude evidence concerning Quintiles' hiring of Gill is **GRANTED**.

**9.     Evidence of co-worker surprise and knowledge absence**

Quintiles moves to exclude evidence that Plaintiff's co-workers were "surprised" by her termination or that they were unaware of Plaintiff's performance issues.  In its motion, Quintiles refers to possible testimony from co-workers Dowdy, Fisher, and Reeve and from subordinates Keeler and Barakat.  Assuming a sufficient foundation is laid to establish that the witnesses are knowledgeable about Plaintiff's job responsibilities and her fulfillment of those responsibilities, the

19

evidence is relevant to the assertion that Plaintiff was terminated as a result of poor job performance. Accordingly, if the proper foundation is established, the witnesses can testify as to their surprise by Plaintiff's termination and that they were unaware Plaintiff had job performance issues. Quintiles' motion *in limine* to exclude evidence of co-worker surprise and knowledge absence is **DENIED**.

## 10.      Dowdy, Fisher, Barakat, and Reeve Testimony

Quintiles moves to exclude certain testimony from Dowdy, Fisher, Barakat, and Reeve regarding: 1) their opinion on Plaintiff's work quality; 2) the circumstances under which they learned of Plaintiff's termination, their surprise, whether Gill criticized Plaintiff's performance, and whether they were informed of the reason for Plaintiff's termination; 3) the scope of their interactions with Plaintiff; and 4) assorted issues such as their own performance reviews, their role in interviewing a replacement, conversations about upcoming depositions, and their own disputes with Gill. Assuming a proper foundation is established, Plaintiff's witnesses can testify as to their opinion on Plaintiff's work quality, the circumstances under which they learned of Plaintiff's termination, their surprise upon learning of Plaintiff's termination, whether they were informed of a reason, any criticism of Plaintiff by Gill, and the scope of their interactions with Plaintiff. The testimony is relevant to Plaintiff's job performance, which is a central issue in this case. However, any testimony concerning the witnesses' own performance reviews, their role in interviewing a replacement, conversations about upcoming depositions, and their own disputes with Gill would tend to confuse and mislead the jury and is excluded under Rule 403 of the Federal Rules of Evidence. Quintiles' motion *in limine* to exclude certain testimony of Dowdy, Fisher, Barakat, and Reeve is **GRANTED in part and DENIED in part**.

20

11.     **Evidence of co-worker discipline**

Quintiles moves to exclude evidence concerning disciplinary action taken against employees other than Plaintiff. Specifically, Quintiles refers to deposition testimony from HR representative Smith concerning specific examples of circumstances under which specific employees other than Plaintiff had been issued (or not issued) Performance Improvement Plans ("PIPs"). Quintiles also refers to deposition testimony from Dowdy regarding his own performance reviews. Quintiles does not object to general testimony concerning Quintiles policies and procedures, it does object to questions regarding specific circumstances surrounding Quintiles' employment decisions for employees other than Plaintiff. Evidence concerning disciplinary action taken against employees other than Plaintiff is not relevant. Further, the evidence would confuse the issues and mislead the jury. Therefore, the evidence is excluded under Rule 401, 402, and, alternatively, Rule 403. Quintiles' motion *in limine* is **GRANTED**. To clarify, Plaintiff's counsel may question Smith concerning policies and procedures but will be prohibited from questioning Smith about specific circumstances involving other employees.

12.     **Evidence of co-worker and third-party opinions on hotel commissions**

Quintiles moves to exclude evidence and testimony from third parties and co-workers regarding whether the manner in which Quintiles handled hotel commissions and rebates was ethical and proper. Specifically, Quintiles refers to potential testimony from Goucher and Keeler. Quintiles does not object to questions regarding whether Plaintiff reported her commission concerns to them, but objects to their opinions about the propriety of Quintiles' commission practices, and the industry standard regarding the handling of commissions. Whether Quintiles' commission practices were ethical and proper requires "specialized" knowledge of industry standards and must be

established with expert testimony. *See* Fed. R. Evid. 701(c) and 702. The proposed testimony from Goucher and Keeler involves such specialized knowledge, yet Goucher and Keeler were not disclosed as experts. Because Goucher and Keeler were not disclosed as experts, they cannot offer opinions regarding whether Quintiles' handling of hotel commissions was ethical or proper within the industry. Additionally, the evidence is excluded under Rule 403 of the Federal Rules of Evidence. Quintiles' motion *in limine* to excluded evidence of co-worker and third-party opinions on hotel commissions practices in the industry is **GRANTED**.

**13.    Evidence of alleged missing computer file**

Quintiles moves to exclude evidence and argument concerning an alleged missing computer file, which Plaintiff claims to have maintained and stored on her company issued laptop. Plaintiff argues that the jury should be permitted to make adverse inferences based on the fact that the evidence is "missing." The Court intends to submit the spoliation issue to the jury and allow the jury to determine whether the alleged computer file existed and whether Quintiles willfully lost or destroyed the file; therefore, Plaintiff may introduce evidence and argument concerning the alleged missing computer file. Quintiles' motion *in limine* to exclude evidence of the alleged missing computer file is **DENIED**.

**14.    Evidence of decision to not contest unemployment benefits**

Quintiles moves to exclude evidence of its decision to not contest Plaintiff's claim for unemployment benefits. Evidence of Quintiles' decision not to contest Plaintiff's claim for unemployment benefits is not relevant and would confuse and mislead the jury. The evidence is excluded under Rule 401, 402, and, alternatively, Rule 403. Quintiles' motion *in limine* to exclude evidence of its decision not to contest unemployment benefits is **GRANTED**.

**15.    Evidence of Plaintiff's previous employment at Quintiles**

Quintiles moves to exclude evidence and documents related to Plaintiff's previous employment with Quintiles between 1993 and 2005.  Specifically, Quintiles seeks to exclude Plaintiff's prior employment agreement, compensation memorandum from 2000, a termination notice, a release agreement, a summary plan description, performance reviews, and testimony that Plaintiff did not have any performance issues during her prior employment with Quintiles. Quintiles' motion is **GRANTED in part and DENIED in part**.  Plaintiff can testify generally that she previously worked for Quintiles but evidence regarding any performance issues during her prior employment is excluded under Rules 401, 402, and/or 403.  Additionally, Rules 401, 402, and/or 403 require exclusion of Plaintiff's prior employment agreement, compensation memorandum from 2000, termination notice, release agreement, and summary plan description because the evidence is irrelevant and would tend to confuse the issues and mislead the jury.

**16.    Evidence of post-termination text messages**

Quintiles moves to exclude evidence of text messages between Plaintiff and current and former Quintiles employees following her termination.  Quintiles' motion is **GRANTED** in that the text messages contain inadmissible hearsay and are irrelevant and are therefore excluded under Rules 802, 401, 402, and, alternatively, 403 of the Federal Rules of Evidence.

**17.    Evidence of partial "screen shots"**

Quintiles moves to exclude partial "screen shots" of portions of emails, calendars, and similar documents from various dates prior to Plaintiff's termination.  Quintiles' motion is **GRANTED** because the documents are only partially legible and would tend to mislead or confuse the jury.  Further, the documents contain inadmissible hearsay and are irrelevant and warrant

23

exclusion under Rules 802, 401, 402, and, alternatively, 403. Fed. R. Evid.

**18.    Evidence of severance and release**

Quintiles moves to exclude evidence concerning the severance Plaintiff was offered in exchange for a release of claims in connection with the termination of Plaintiff's employment. Evidence of the severance offered to Plaintiff is inadmissible under Rule 408 and also warrants exclusion under Rules 401, 402, and/or 403.  Quintiles' motion *in limine* to exclude evidence of severance and release is **GRANTED**.

**19.    Evidence of workers' compensation**

Quintiles moves to exclude evidence related to Plaintiff's workers' compensation claims. Quintiles' motion is **GRANTED**.  Evidence of Plaintiff's workers' compensation claims is irrelevant and would confuse and mislead the jury and is excluded under Rule 401, 402, and, alternatively, Rule 403.

**20.    Exhibit 25 to Plaintiff's MSJ Brief**

Quintiles moves to exclude a chart that was prepared by Plaintiff's counsel and attached as exhibit 25 to Plaintiff's brief in opposition to Quintiles' motion for summary judgment.  First, the documents the chart attempts to summarize are not so voluminous that they cannot be conveniently examined in court. *See* Fed. R. Evid. 1006.  The documents are only about 45 pages in length. Additionally, the chart is not an accurate summary of the performance reviews, but rather Plaintiff's counsel's own characterization of whether Plaintiff's alleged performance deficiencies were contradicted by performance evaluations.  The chart also includes inadmissible hearsay of Goucher. Quintiles' motion *in limine* to exclude Plaintiff's counsel's chart identified as exhibit 25 to Plaintiff's brief in opposition to Quintiles' motion for summary judgment is **GRANTED**.

21.    **Evidence of miscellaneous September 2012 communications and reports**

Quintiles moves to exclude various emails, reports, and related documents from around September 2012, which show activities that Plaintiff was engaged in at the time. Assuming an appropriate foundation is provided, the evidence may be relevant to Plaintiff's performance issues. Plaintiff does not address the hearsay objection and it is unclear at this time if the documents are being offered for the truth of the matter asserted or for some other purpose. Quintiles can raise a hearsay objection at trial because it is unclear at this stage whether a hearsay objection or exception to the hearsay rule would apply as Plaintiff's counsel has not addressed the hearsay argument. Quintiles' motion *in limine* to exclude September 2012 communications and reports is **DENIED without prejudice**.

22.    **Cesarski, Hytry, Shankle, and D. Evans**

Quintiles moves to exclude testimony from potential witnesses Richard Cesarski, Roman Hytry, Wanda Shankle, and Doug Evans. With respect to Cesarski, Hytry, and Shankle, Plaintiff responds that their appearance is unlikely due to their unavailability and an inability to issue subpoenas. The Court finds, however, that because Plaintiff did not work with Cesarski and Hytry during the 2009 through 2012 period, their proposed testimony concerns activities that are too remote in time. Testimony from Cesarski and Hytry would be irrelevant and therefore excluded under Rules 401, 402, and/or 403. Fed. R. Evid. It is unclear when Wanda Shankle worked with Plaintiff; however, if Shankle worked with Plaintiff during the 2009 through 2012 period, she may testify. Plaintiff's husband, Doug Evans, may testify to the extent of his knowledge regarding her job search. Other testimony regarding what Plaintiff said would be hearsay. Quintiles' motion *in limine* to exclude testimony from Cesarski, Hytry, Shankle, and Evans is **GRANTED in part and**

**DENIED in part**.

**23.    Drs. Wood and Vander Kolk**

Quintiles moves to exclude any new, undisclosed opinions from Plaintiff's experts, Dr. Wood and Dr. Vander Kolk.  Plaintiff responds that Dr. Wood and Dr. Vander Kolk will not be offering new opinions, but merely updated calculations based on changes to Plaintiff's employment status.  To the extent, Dr. Wood and Dr. Vander Kolk simply update damages calculations, Quintiles' motion *in limine* is **DENIED**.  In the event that there are any significant material changes in the opinions already disclosed, the Court may consider exclusion at trial.  Defense counsel should bring any material changes to the Court's attention at trial.  However, as the Court understands Plaintiff's response, there are no major changes to any opinions other than updates to calculations based on Plaintiff's employment status.

**24.    Comments on failure to call witnesses**

Quintiles moves to bar Plaintiff from making any argument or statement that Quintiles has failed to call a witness or present live testimony because Plaintiff had an opportunity to depose them.  "Where a witness is readily available to both sides, no inference is to be drawn against either party from the fact that he has not been called." *United States v. Fisher*, 484 F.2d 868, 870 (4th Cir. 1973).  At this stage, the Court does not know who will be called and whether they are current employees or within the subpoena power of the parties.  The Court assumes that both sides had access to the witnesses through pretrial discovery.  However, at this stage, not knowing what witnesses will be called, Quintiles' motion is premature and therefore **DENIED without prejudice**.

**25.    Evidence of Quintiles' revenues and profits**

Quintiles moves to exclude evidence of its revenues and profits arguing the evidence has no

relevance and would be unduly prejudicial.   The Court notes that this is not a punitive damages

case; therefore, Quintiles' revenues and profits have no relevance to the issues in this case.

Quintiles' motion *in limine* to exclude evidence of revenues and profits is **GRANTED** based on

Rule 401, 402, and, alternatively, Rule 403. Fed. R. Evid.  However, amounts of commissions, as

well as the travel department budget, may be relevant to the commissions issue.

26.    **Exhibits in opening statements**

Quintiles moves to exclude the use of exhibits during opening statements.  Quintiles' motion

is **GRANTED**.  The parties are directed to comply with Local Rule 83.VI.01, which provides that

"[c]ounsel for any party may summarize their pleadings to the jury or make a statement to the jury

of the ultimate facts alleged in the pleadings and their theory of the case, but counsel shall not argue

the case during opening statement." Local Civ. Rule 83.VI.01 (D.S.C.).

27.    **Golden Rule**

Finally, Quintiles moves to bar Plaintiff from asking jurors to put themselves in Plaintiff's

shoes and to give Plaintiff the relief they would want if they were in Plaintiff's position.  Quintiles

also moves to prohibit Plaintiff's counsel from asserting his personal opinion concerning witness

credibility.  Plaintiff's counsel responded that he is in agreement with Quintiles' request.  Quintiles'

motion is **GRANTED**.

**Conclusion**

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART**

Plaintiff's motion *in limine* for negative inferences from missing evidence [ECF #117]; **GRANTS**

**IN PART and DENIES IN PART**, Defendant's motion *in limine* concerning damages [ECF #118];

and **GRANTS IN PART and DENIES IN PART**, Defendant's omnibus motion *in limine* [ECF

27

#119].

      **IT IS SO ORDERED**.

December 23, 2015                 s/ R. Bryan Harwell
Florence, South Carolina         R. Bryan Harwell
                                    United States District Judge